IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHEYANNE MABRY, | : Civ. No. 1:24-CV-02261 |
| Plaintiff, | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO,<br>Commissioner of Social Security,[1] | : |
| Defendant. | : |

MEMORANDUM OPINION

I. Introduction

Cheyanne Mabry filed a Title XVI application for supplementary security income on August 9, 2022. (Tr. 17). Following an initial hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Mabry was not disabled from her alleged onset date of disability of January 1, 2022, through January 18, 2024, the date of the ALJ's decision. (Tr. 17, 29).

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

1

Mabry now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, we conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II. Statement of Facts and of the Case

On August 9, 2022, Mabry applied for supplemental security income, citing an array of physical and mental impairments, including migraines, obesity, generalized anxiety disorder, major depression disorder, and bipolar disorder. (Tr. 19, 193). Mabry was 25 years old at the time of the alleged onset of disability, had at least a high school education, and had no relevant past employment. (Tr. 28).[2]

The ALJ conducted a hearing in Mabry's case on September 11, 2023. (Tr. 34-57). Mabry and a VE both testified at this hearing. Mabry testified about her panic attacks, her separation anxiety, and her need to

---

[2] Because Mabry's appeal focuses exclusively on the ALJ's treatment of the testimony of the vocational expert ("VE") in this matter, we will forgo discussion of Mabry's health records and evaluations.

2

sleep as much as 18 hours a day. (Tr. 40-49). The VE answered hypothetical questions from both the ALJ and Mabry's counsel about the capabilities of an individual with Mabry's background and specific types of limitations. (Tr. 52-56). The VE testified that a person with Mabry's background was fit to work as a warehouse worker, an assembler of electrical accessories, or a masker, but upon questioning by Mabry's counsel, stated that a person with Mabry's limitations was incapable of following "detailed oral or written instructions." (*Id.*).

Following this hearing, on January 18, 2024, the ALJ issued a decision denying Mabry's application for benefits. (Tr. 17-29). In that decision, the ALJ first concluded that Mabry had not engaged in substantial gainful activity since entering her application. (Tr. 19). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Mabry suffered from the following severe impairments: generalized anxiety disorder, major depression disorder, and bipolar disorder. (*Id.*). At Step 3 the ALJ determined that Mabry did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 20).

3

Between Steps 3 and 4 the ALJ concluded that Mabry retained the residual functional capacity to:

> [P]erform a full range of work at all exertional levels but with the following non-exertional limitations: she would be able to understand, retain, and carry out simple instructions with occasional work place changes. She would be capable of occasional decision-making with respect to work-related activities. She should avoid occupations, which would expose her to noise above a level three noise intensity level (moderate). She should avoid interaction with the public except for incidental contact. Claimant would be capable of frequent interaction with supervisors, however, would be capable of no more than occasional interactions with co-workers.

(Tr. 22).

In reaching this RFC determination, the ALJ made the following findings: the ALJ considered Mabry's reported subjective symptoms, and found that "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record [.]" (Tr. 23). The ALJ explained that Mabry's "statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the

4

objective evidence does not support the severity of the claimant's alleged symptoms related to her impairments." (*Id.*). The ALJ then embarked on a review of the medical record evidence he found supported those findings, including findings of normal mental health evaluations and evidence that Mabry's symptoms responded to medication. (Tr. 19-25).

The ALJ next considered the medical opinion evidence. He was not persuaded by the opinions of the state agency mental consultants, Dr. Thomas Fink and Dr. Timothy Ostrich. (Tr. 27). Those doctors opined that Mabry had no severe mental health impairments, but the ALJ concluded that diagnosis was not supported by Mabry's medical records, which showed consistent treatment via medication, psychiatry, and therapy. (*Id.*). The ALJ was persuaded by the opinion of Dr. Linda Myers, who opined that Mabry's migraines and obesity were not severe impairments. (*Id.*).

The ALJ then found at Step 4 that Mabry had no relevant past work, but, at Step 5, found that she could perform other occupations that existed in significant numbers in the national economy, such as warehouse worker, assembler of electrical accessories, and masker. (Tr.

5

28-29). Having reached these conclusions, the ALJ determined that Mabry had not met the demanding showing necessary to sustain this claim for benefits and denied her claim. (Tr. 29).

This appeal followed. (Doc. 1). On appeal, Mabry challenges the adequacy of the ALJ's decision, arguing it is not supported by substantial evidence. (Doc. 10 at 3-11). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be remanded for further consideration by the Commissioner in accordance with this decision.

### III. Discussion

#### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such

7

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must

sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ

must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings*, 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record,

13

whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C. This Case Will Be Remanded.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). After consideration, we conclude that the decision here is not supported by substantial evidence.

The ALJ, with assistance from the VE, found that Mabry could work as a warehouse worker, an assembler of electrical accessories, or a masker. (Tr. 28-29). Mabry argues that testimony from the VE on cross examination indicated Mabry is incapable of performing the reasoning level two jobs identified by the VE.

We first note that "[t]he Commissioner can [] rely on testimony from a VE to meet its step-five evidentiary burden." *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) (citing 20 C.F.R. § 404.1566(e)). This is so

14

where a common issue arises and the "VE's testimony conflicts with other sources of information relied on by the Commissioner, namely the [Dictionary of Occupational Titles ("DOT")]." *Id.* In this scenario, an ALJ is required to resolve any discrepancy or conflict by: "(1) ask[ing], on the record, whether the VE's testimony is consistent with the DOT, (2) 'elicit[ing] a reasonable explanation' where inconsistency does appear, and (3) explain[ing] in its decision 'how the conflict was resolved.'" *Id.* (quoting *Burns*, 312 F.3d at 127); *see also* SSR 00-4p, 2000 WL 1898704, at *4.

In this matter, the ALJ asked the VE if there were occupations available for a hypothetical person who, *inter alia*, was "able to understand, retain, and to carry out simple instructions [.]" (Tr. 52). The VE testified that the three occupations discussed above were appropriate for a person with those limitations. (Tr. 53). Two of those occupations, warehouse worker and assembler of electrical accessories, are identified by the DOT as having a reasoning level of two. DOT 922.687-058, 1991 WL 688132; DOT 729.687-010, 1991 WL 679733. A reasoning level two occupation requires the ability to "apply commonsense understanding to

15

*carry out detailed but uninvolved written or oral instructions.*" Appendix C: General Education Development, DOT, 1991 WL 688702 (emphasis added).

Mabry's attorney asked the VE during cross-examination if the hypothetical limitations suggested by the ALJ would "preclude the ability to carry out detailed written and oral instructions [?]" (Tr. 55-56). The VE answered: "in my opinion, yes." (Tr. 56). This answer, in our view, created an apparent conflict that was never adequately resolved. The plain meaning of the phrase "detailed but uninvolved instructions" is that it describes a type, or sub-set, of "detailed instructions." Accordingly, testimony that Mabry is incapable of carrying out "detailed instructions" necessarily implies she is unable to carry out "detailed but uninvolved instructions," and that Mabry is unfit for the reasoning level two jobs the ALJ found appropriate for her. This apparent conflict is further complicated by the fact that, as the Commissioner points out, counsel left out the words "but uninvolved" when questioning the VE.

While the Commissioner contends that the VE's testimony is not in conflict with the DOT's definition of reasoning level two jobs, given

16

counsel's questioning and the VE's answers in response, we are constrained to conclude that there exists an ambiguity that the ALJ did not resolve. The law is clear that the Commissioner's desired conclusion, if appropriate, needed to be adduced by the ALJ through further questioning of the VE and explained in the decision, neither of which occurred in this case. *Zirnsak*, 777 F.3d at 616; SSR 00-4p at *4, 2000 WL 1899704. Thus, on the record before us, we cannot conclude that the ALJ's decision that Mabry could perform reasoning level two jobs, which require a capability to carry out detailed but uninvolved instructions, is supported by substantial evidence where the VE testified that an individual with Mabry's limitations could not carry out detailed instructions. Accordingly, we must remand.

In sum, we conclude that the testimony elicited on cross-examination appears to conflict with information contained in the DOT, and that the ALJ failed to elicit testimony clarifying that apparent conflict and to explain the apparent conflict in his decision. We therefore conclude the decision is not supported by substantial evidence, and remand is required for further consideration of these issues. While we

reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner will be remanded for further consideration. An appropriate order follows.

Submitted this 18th day of July 2024.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge